UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RIPPLE ANALYTICS INC.,

                Plaintiff,

   -against-

PEOPLE CENTER, INC. d/b/a RIPPLING,

                Defendant.
-------------------------------------------------------------X
PEOPLE CENTER, INC. d/b/a RIPPLING,

                Counterclaimant,

   -against-

RIPPLE ANALYTICS INC.,

                Counterclaimant-Defendant.
-------------------------------------------------------------X

FILED
CLERK

3:52 pm, Jul 26, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM AND ORDER**

20-CV-894 (GRB)

**GARY R. BROWN, United States District Judge:**

      Rarely in civil litigation is a case dismissed for failure to join a "real party in interest" under Rule 17(a) of the Federal Rules of Civil Procedure, mainly because that rule encompasses generous remedial procedures which allow litigants to remedy any error through ratification, joinder or substitution within a "reasonable period." *See* FED. R. CIV. P. (a)(3). Of course, these procedures cannot help a litigant who fails or refuses to properly invoke them. In this case, despite numerous objections by defendant since 2021, inquiry by the Court and repeated representations made by plaintiff's counsel, the plaintiff, which no longer owns the trademark in question, the associated goodwill or any claims made in this action, has failed to effectively remedy this defect. As such, defendant's motion to dismiss under Rule 17 is – surprisingly – meritorious and, for the reasons that follow, is granted.

1

*Background*

This action was commenced via the filing of a complaint in February 2020 by plaintiff Ripple Analytics Inc. Docket Entry ("DE") 1. In sum and substance, the complaint purports to set forth claims for trademark infringement and unfair competition, the latter theory arising under both state and federal law. *See generally id.* The allegations state that plaintiff owns a registered federal trademark (U.S. Reg. 5,430,908), issued in March 2018, for the use of the word "RIPPLE" in connection with human-resources related software and complains of alleged infringement by defendant for its use of "RIPPLING" in relation to a similar product. *Id.* ¶¶ 1-6.

The complaint, repeatedly and unequivocally, alleges that "Plaintiff owns all right, title and interest in and to the RIPPLE® mark." *Id.* ¶¶ 31, 50; *cf.* ¶¶ 1, 6, 24, 25, 29, 33, 40, 44 (references to "Plaintiff's RIPPLE® mark"). During litigation, these allegations transmuted into sworn evidence: for example, Noah Pusey, plaintiff's CEO and principal shareholder, testified at one point that "Ripple Analytics owns [the trademark]." DE 89-3 at 5.[1] The problem with these allegations, along with other representations made by plaintiff throughout this litigation, is that they are blazingly untrue.

The undisputed facts demonstrate that via an Assignment and Assumption Agreement entered in April 2018, Ripple assigned all of its interests in any intellectual property, including trademarks, associated goodwill, and all claims emanating therefrom, to Pusey. DE 89-6; DE 89-7. In its responsive Rule 56.1 statement, counsel for Ripple acknowledges that Ripple's "intellectual property, assets and liabilities was [sic] assigned and assumed by Mr. Pusey." DE 89-9 ¶¶ 1, 19-22.

---

[1] At a Rule 30(b)(6) deposition of plaintiff, counsel invoked privilege and instructed the witness not to answer questions about whether Ripple had assigned interests in this lawsuit to others. DE 89-5 at 6:21-25, 7:1-11.

The issue was first raised by defense counsel by way of a proposed amended answer and counterclaim in late 2021. DE 89-10 at 2; DE 84. Counsel for plaintiff swiftly responded that "any issue concerning standing is easily cured by adding Noah Pusey as a party-plaintiff in accordance with Fed. R. Civ. P. 17 (a)(3). DE 89-11 at 2. Counsel repeated this assertion in subsequent correspondence. DE 89-12 at 2. Yet, no request has been made to effect joinder or substitution of Mr. Pusey. About a month later, in an affidavit opposing the amended answer, Mr. Pusey stated the following via affidavit in a purported effort at ratification:

> 6. I have been overseeing and participating in all legal proceedings in this matter from the beginning. I have read the complaint and am fully familiar with all of the allegations in the complaint. Any judgment obtained in this or any case pursuing the interests of Ripple will be for my sole benefit; therefore I have a very strong interest in the outcome of this case.
>
> 7. A true and accurate copy of the complaint in this action, filed February 19, 2020 is attached hereto as Exhibit 3.
>
> 8. By this Declaration, I ratify all of Plaintiff's allegations in this case and each cause of action alleged. As a real party in interest, I am prepared to step in immediately as Plaintiff.

DE 89-15 at 3. Importantly, nowhere in that document, *id.*, nor in the reams of filings in this matter, did Mr. Pusey aver that he would be bound by the Court's rulings. And no effort has been made to have Pusey "step in immediately as Plaintiff."

And it wasn't for lack of opportunity. During a pre-motion conference, the Court asked counsel, "Are you prepared to substitute Mr. Pusey in for the company as plaintiff?" DE 85 at 12:6-7. Counsel's response was a dissembling fusillade, during which no affirmative response was provided. *See id.* at 12-17.

Defendant now moves for dismissal under Rule 17, or in the alternative for summary judgment, principally based upon the failure to join Pusey, the real party in interest in the litigation.

This opinion follows.

3

*Discussion*

*Trademark Infringement Claim*

"An action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17. Who is the real party in interest? The Circuit has held that "ownership of the relevant trademark is one of the 'necessary elements . . . of trademark infringement under the Lanham Act.'" *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 70 (2d Cir. 2010) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 259–60 (2d Cir. 2005)). Notably, "federal courts may, applying the relevant law, adjudicate the ownership of a trademark as part of an infringement claim." *Id.* Certainly, then, at least regarding the trademark infringement claims, Pusey undeniably owns the mark (notwithstanding allegations, representations and testimony suggesting otherwise) and is the real party in interest.

On this motion, counsel for plaintiff continues to advocate for Ripple's ownership of the mark,[2] employing a logic befitting *Alice in Wonderland*.[3] Consider the following argument drawn from plaintiff's brief:

> [T]he purported "assignment" agreement as executed by Mr. Pusey for both parties (individually and as Ripple's owner-CEO) did not and was not intended to transfer the legal ownership of the trademark to Mr. Pusey. The legal ownership of the mark always remained with Ripple, and thus, Ripple is the real party in interest with standing to bring each and every claim.

DE 88-7 at 8. Meanwhile, the terms of the assignment agreement entered between plaintiff and Pusey provides that:

> Ripple hereby assigns, conveys and transfers to Assignee (the "***Assignment***"), and Assignee does hereby accept the Assignment of, all right, title and interest in and to the Covered IP, [including trademarks].

---

[2] Plaintiff's counsel contends that defendant's motion argument based upon ownership of the subject trademark "is nonsensical, frivolous and waste of all parties' and this Court's time." DE 89-21 at 27. That description aptly applies to some arguments made on this motion, just not those made by defendant.

[3] "If I had a world of my own, everything would be nonsense. Nothing would be what it is, because everything would be what it isn't. And contrary wise, what is, it wouldn't be. And what it wouldn't be, it would. You see?" ALICE IN WONDERLAND (Walt Disney Productions 1951).

4

DE 89-6 at 3.  The accompanying Bill of Sale and Assignment indicates that Ripple:

> has agreed to sell, assign and transfer to Buyer all of Seller's right, title and interest in and to the assets described on Exhibit A, [which includes]:
>
> 2. Trade name rights to Ripple Analytics . . . registered and unregistered
> 3. US Trademark Registration No. 5,430,908 . . .
> 4. All trademarks . . . registered and unregistered

DE 89-7 at 2,3.  The undisputed terms of these agreements belie plaintiff's argument that "the parties never intended to assign the mark."  *See* DE 89-21 at 12.

Plaintiff would have the Court rewrite the agreements it entered with Pusey, something that this Court cannot and will not do for several reasons: (1) the agreements are not at issue in this litigation; (2) Pusey is not a party and (3) preliminary review of the agreements suggests that the terms are unambiguous, rendering the issue of intent beyond the purview of legal review. Similarly untethered from reality is plaintiff's argument that the Court should disregard the assignment as ineffectual based on the principle that "trademark rights cannot be assigned without also assigning the goodwill and operation of the business in which the mark is used."  DE 89-21 at 7; *cf. id.* at 17 ("the mark could not be assigned to Mr. Pusey without the accompanying business and its goodwill").  But the agreement expressly assigns all assets of the business, including goodwill associated with the trademark, to Pusey.  DE 89-6 at 2 ("all of Ripple's right, title and interests in all assets and properties"); *id.* at 3 ("all trademarks . . . together with the goodwill symbolized"); DE 89-7 at 3 ("All goodwill and going concern value").

Thus, Pusey is inarguably the real party in interest.  *See Fed. Treasury Enter.*, 726 F.3d at 75 ("only the owner of the trademark is entitled to sue for its infringement"). The failure to include Pusey as a party, though, could have been readily cured.  Rule 17(a)(3) provides as follows:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the

5

>real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

FED. R. CIV. P. 17(a)(3).  This provision was "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Id.* advisory committee's note to 1966 amendment.  Thus, when a party acts with reasonable dispatch to correct such an error, all is forgiven.  "If a party successfully moves for ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 421 (2d Cir. 2015).

In contrast to the hypothetical situations envisioned by the Rule, here, determining who owned the trademark and the resultant claims given the specificity of the agreements entered by plaintiff was not difficult, nor can one really argue that there was an "understandable mistake." Indeed, this case much more closely resembles a situation "where there was no semblance of any reasonable basis for the naming of an incorrect party." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997).  Nevertheless, plaintiff acknowledged awareness of the proper remedial steps and was provided ample opportunity, numerous reminders and more than a year to correct the error, but simply failed or refused to do so.  For example, during the pre-motion conference, plaintiff's counsel declined the Court's invitation to remedy the pleading deficits by substituting or joining Pusey as a plaintiff.  DE 85 at 12:8-23.

Counsel's exclusive reliance upon Pusey's ostensible "ratification' of the suit proves misplaced. The Second Circuit has held that to ratify a suit, "the real party in interest must (1) authorize continuation of the action and (2) agree to be bound by its result." *Fed. Treasury Enter.*, 726 F.3d at 83.  Nowhere in his affidavit does Pusey satisfy the second condition of this

6

straightforward requisite. Though the supposed ratification was filed more than a year ago, and the deficit has been pointed out numerous times, counsel made no effort to supplement this ineffectual submission. And, in this instance, the omission is not without consequence. In a pre-motion letter submitted in March 2022, counsel for Ripple relied upon Pusey's purported ratification of the suit, but added:

> [I]f Rippling's legal position were correct, it would simply lead to a dismissal of Ripple's action and the immediate filing by Pusey of the exact same claims against Rippling resulting in the parties starting the process from scratch.

DE 69 at 2. Therefore, Pusey's failure to acknowledge that he would be bound by the decision of this Court proves significant given that counsel has already threatened to file an identical suit. Such unfairness to the defendant, which invested heavily in this litigation and had to painstakingly unearth the trademark ownership issues, cannot be condoned.

*Ripple's Standing to Pursue 15 U.S.C. §1125(a) Claim*

Counsel for plaintiff argues that, even absent ownership of the trademark, Ripple has standing to pursue its second cause of action, entitled "federal unfair competition" pursuant to 15 U.S.C. § 1125(a). Plaintiff seeks shelter in the broad statutory language of that section, which provides that an action may be brought by "any person who believes that he or she is likely to be damaged" by, among other things "any false designation of origin." *Id.* In another exemplar of tortured logic, counsel argues that "if Mr. Pusey is 'not using' the mark and Ripple does not have 'license to use,' Ripple must be the party actually using the mark," and hence has standing to bring a § 1125(a) claim. DE 89-21 at 27.

Despite the broad language of the statute, the United States Supreme Court has construed the statute far more narrowly, noting that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc.*

7

*v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (cleaned up) ("Read literally, that broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III…. [T]he unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that § 1125(a) should not get such an expansive reading."). And, of course, it is incumbent upon plaintiff to allege and prove standing as an element of its case:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.,* at 560–561, 112 S.Ct. 2130; *Friends of the Earth, Inc.*, 528 U.S., at 180–181, 120 S.Ct. 693. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Warth*, *supra*, at 518, 95 S.Ct. 2197.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

According to the complaint, plaintiff's standing to bring an § 1125(a) claim emanates from the allegation that "Plaintiff owns all right, title and interest in and to the RIPPLE® mark, U.S. Reg. 5,430,908," DE 1, ¶ 31, which plaintiff now acknowledges is factually false. The claim specifies that the acts complained of "constitute infringement of Plaintiff's RIPPLE® mark under 15 U.S.C. § 1114(1)" and that "Plaintiff has suffered and continues to suffer damage to its trademark rights, business reputation and goodwill." *Id.* ¶¶ 33, 34. Indeed, during the pre-motion conference, plaintiff's counsel—who substituted for the attorneys that filed the case—acknowledged the pleading problem:

> **The Court:** It looks to me like there was some sloppy drafting by somebody, I don't know who, [in] that the wrong party is named.[ ]
>
> **Mr. Williams:** [ ] We weren't the ones who drafted the complaint but yes, there was sloppy drafting on their part.

DE 85 at 7:4-7, 13:16-18.

8

None of the allegations support plaintiff's new-found notion that its standing derives solely from its usage of the mark distinct from its alleged ownership. Indeed, even with the record before the Court, the nature of plaintiff's right to such use remains speculative and inscrutable. On this motion, plaintiff's counsel states the following in a footnote regarding those purported rights:

> Other than the reorganization documents, there are no written agreements as to the use of the mark – its use was unchanged and remained with Ripple. The parties believe that Ripple was and continues to be the owner of the business and its associated mark and the "registrant" on the USPTO register. The parties did not record any assignment, which is consistent with their view that Ripple is the owner. But, even if the court were to conclude that Mr. Pusey was assigned the mark in a way that is valid, it would have to account for the continued use by Ripple as based on some other arrangement. Any such arrangement, whether as an assignment or license back or as co-owners, would maintain the priority of the mark due to the related party attribution rule.[4]

DE 89-21 at 29, n.11. The law requires that a plaintiff articulate its basis for asserting standing in properly filed allegations. The Court cannot substitute such indefinite marginalia for the admittedly false allegations of trademark ownership. Neither the Court nor the defendant can or should be expected to rely on prognostication to identify the basis for plaintiff's claim.

Thus, plaintiff's § 1125(a) claim is dismissed based upon a failure to properly allege standing.

*Plaintiff's State Law Unfair Competition Claim*

Plaintiff's third cause of action for unfair competition sounds in New York common law and is before this Court under the aegis of pendent jurisdiction. DE 1, ¶¶ 9-10; 28 U.S.C. § 1367(a). In certain instances, where dismissal of the federal claims is based upon a lack of subject matter jurisdiction (or are wholly insubstantial), which might be said of this case, the Court cannot

---

[4] Notably, counsel's reference to what "the parties believe" appears to refer not to the parties to this case, but rather to plaintiff and Mr. Pusey, who remains a non-party. It bears repeating that this prattle appears in the brief for *plaintiff*, as one might expect otherwise.

9

exercise supplemental jurisdiction over pendent claims. *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) ("a district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction."). Otherwise, as this Court has previously held:

> Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over" state law claims if, as here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014). "Dismissal of the state law claims, however, is not absolutely mandatory, and the authority of whether to retain or decline jurisdiction resides in the sound discretion of the Court." *Cinevert v. Varsity Bus Co.*, 2014 WL 4699674, at *3 (E.D.N.Y. Sept. 22, 2014); *see Delaney*, 766 F.3d at 170. "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity — the '*Cohill* factors.'" *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)); see *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.").

*Espinosa v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-00223 (GRB), 2021 WL 826168, at *3 (E.D.N.Y. 2021). Even assuming this Court has discretion to exercise such jurisdiction, given that the Court has not dealt with the substance of this action in any significant way, and the federal claims are being dismissed well before trial, the factors weigh against such exercise. Therefore, the third claim is dismissed.

*Nature of the Dismissals*

The only remaining question is whether the dismissals herein are with prejudice to repleading or refiling. Defendant argues for dismissal with prejudice,[5] considering the false

---

[5] Defendant's request that the Court prevent Pusey from attempting to join this case or filing another, as well as plaintiff's various requests that the Court adjudicate certain of Pusey's rights, are not properly before this Court, as Pusey is not a party to this action.

10

statements proffered by plaintiff as well as the failure or refusal to correct the standing deficits notwithstanding the passage of several years of litigation. As to plaintiff, while counsel has failed to request leave to replead, the papers, at least implicitly, raise the issue. *See* DE 89-21 at 24.

The standard for permitting amendment, leave for which is generally freely granted, is well known. "[G]ranting or denying such leave is within the discretion of the district court, leave to amend will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile." *Morales v. Valley Stream Union Free Sch. Dist. 24*, No. 18-3897 (SJF) (AYS), 2019 WL 5874136, at *5 (E.D.N.Y. Aug. 14, 2019), *adopted by* 2019 WL 4253975 (E.D.N.Y. Sept. 9, 2019) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Defendant argues both undue delay and undue prejudice, and the argument is not without merit. Moreover, plaintiff's failure to provide a proposed amended complaint further militates against granting leave. Nevertheless, the Court will consider the question of futility.

It is beyond peradventure that any attempt to revive the trademark infringement claim as to Ripple Analytics would be futile, as the undisputed facts demonstrate that plaintiff is not the owner of the trademark, a critical element of a trademark infringement claim. Thus, the first claim is dismissed with prejudice as to plaintiff.

The record as to the second claim under 15 U.S.C. § 1125(a) remains sufficiently opaque such that the Court cannot determine whether repleading on behalf of Ripple would be futile. Thus, with some reticence given the delays and litigative improprieties here, the Court will deem the dismissal of the second cause of action to be without prejudice. Because the dismissal of the third cause of action turns on the viability of the second, that dismissal will also be without prejudice to

repleading should the second count be refiled (and, of course, should be deemed to be without prejudice as to refiling in a state forum).

This Court's determination that the second and third claims might be subject to repleading should not be viewed by counsel as aspirational. *Schimkewitsch v. New York Inst. of Tech.*, No. CV 19-5199 (GRB)(AYS), 2020 WL 3000483, at *7 (E.D.N.Y. June 4, 2020) ("plaintiff's counsel is cautioned that repleading should be undertaken only if warranted by the available facts"). In other words, counsel is cautioned that it should only attempt refiling after careful consideration of the matters contained in this opinion and after a thorough determination that such repleading is appropriate. On this motion, defense counsel makes formidable arguments that the dismissal should be with prejudice because of plaintiff's "bad faith" in litigating this action. Of course, should plaintiff attempt to refile the action, all of these arguments will remain available to defendant to oppose the refiling and support any other relief that might be sought. Thus, plaintiff should proceed with caution.

*Conclusion*

For the reasons set forth herein, plaintiff's claim for trademark infringement is dismissed with prejudice, while its claims for unfair competition under state and federal law are dismissed without prejudice. Defendant's motions to amend its answer and for summary judgment are denied as moot. Should plaintiff opt to seek leave to file an amended complaint, such motion shall be filed within twenty days of the date of this order.

**SO ORDERED.**

Dated: July 26, 2023
      Central Islip, New York

                                      /s/ Gary R. Brown
                                      **GARY R. BROWN**
                                      **UNITED STATES DISTRICT JUDGE**